UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES RICHARD AYRE,

　　　　　　　Petitioner,

　　　　　　　　　　　　　　　　　　CASE NO. 5:06-CV-11327
　　　　v.　　　　　　　　　　　　　JUDGE JOHN CORBETT O'MEARA
　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE PAUL J. KOMIVES

WILLIE O. SMITH,

　　　　　　　Respondent.
_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.　　　RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.　　　REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　　A.　　*Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　　B.　　*Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　　C.　　*Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
　　　D.　　*Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
　　　E.　　*Illegal Search (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
　　　F.　　*Validity of Plea (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
　　　　　1.　　*Illusory and Involuntary Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　　　　　2.　　*Factual Basis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
　　　G.　　*Ineffective Assistance (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
　　　　　1.　　*Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
　　　　　2.　　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
　　　　　　　a. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
　　　　　　　b. Failure to Advise and Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
　　　H.　　*Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 29
　　　　　1.　　*Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
　　　　　2.　　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
　　　I.　　*Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
III.　　NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

　　　*　　　*　　　*　　　*　　　*


I.　　　**RECOMMENDATION:** The Court should deny petitioner's application for the writ of

habeas corpus.  If the Court accepts this recommendation, the Court should grant petitioner a

certificate of appealability with respect to his claim that his plea was involuntary because he did not

properly plead to using a computer to facilitate a crime under MICH. COMP. LAWS § 752.796, and

should deny a certificate of appealability in all other respects.

II.      REPORT:

A.      *Procedural History*

1.      Petitioner James Richard Ayre is a former Michigan state prisoner who, at the time he filed this petition, was incarcerated at the Ionia Maximum Correctional Facility in Ionia, Michigan.  Petitioner has since been paroled from his state sentences, and is currently confined in a South Carolina correctional facility.

2.      On May 28, 2003, petitioner was convicted of three counts of possession of sexually abusive material and three counts of use of a computer in the possession of child sexually abusive material, pursuant to his guilty plea in the Midland County Circuit Court.  On July 22, 2003, he was sentenced to three concurrent terms of 42 months' to 7 years' imprisonment.

3.      On July 20, 2004, petitioner filed a motion to withdraw his plea, arguing that his plea was involuntary and that a factual basis for the plea was not established.  The trial court held a hearing on the motion on October 16, 2004, and denied the motion in a written opinion on December 9, 2004.  *See People v. Ayre*, No. 03-1575-FH-C (Midland County, Mich., Cir. Ct. Dec. 9, 2004) [hereinafter "Withdrawal Op."]

4.      Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE FACTUAL BASIS FOR THE PLEA OF GUILTY IN THIS CASE IS INSUFFICIENT BECAUSE DEFENDANT DID NOT PLEAD TO THE OFFENSE WITH WHICH HE WAS CHARGED, NOR DID HIS ACTIONS MEET THE REQUIREMENTS OF EITHER CRIMINAL STATUTE APPLIED IN THIS CASE, IN VIOLATION OF US CONST, AMS V AND XIV, AND CONST 1963, ART I, SECS 17 AND 20.

II.      DEFENDANT'S PLEA IS ILLUSORY BECAUSE IT WAS BASED ON

2

> INFORMATION RENDERED NUGATORY BY THE COURT'S FINDING AS TO WHETHER MCL 752.796 IS A SUBSTANTIVE OFFENSE OR A SENTENCE ENHANCEMENT, IN VIOLATION OF US CONST, AMS V AND XIV, AND CONST 1963, ART I, SECS 17 AND 20.

> III.    THE PLEA IN THIS CASE IS CONSTITUTIONALLY DEFICIENT FOR NOT BEING KNOWING AND VOLUNTARY, IN VIOLATION OF US CONST, AMS V AND XIV, AND CONST 1963, ART I, SECS 17 AND 20.

> IV.    THE SENTENCE IN THIS CASE IS IN VIOLATION OF STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS REQUIRING ESTABLISHMENT OF FACTS WHICH INCREASE A STATUTORY MINIMUM TO BE PART OF THE RECORD BY PROPER FACT-FINDING, IN VIOLATION OF US CONST, AMS V AND XIV, AND CONST 1963, ART I, SECS 17 AND 20.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *See People v. Ayre*, No. 259955 (Mich. Ct. App. May 12, 2005).

5.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court, as well as two additional issues: (1) illegal arrest and search; and (2) ineffective assistance of trial and appellate counsel. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Ayre*, 474 Mich. 956, 706 N.W.2d 741 (2005).

6.    Petitioner filed an application for the writ of habeas corpus on March 16, 2006, raising the six claims he raised in the Michigan Supreme Court. The Court partially granted respondent's motion to dismiss for lack of exhaustion and stayed the case so that petitioner could return to state court to exhaust his claims.

7.    Petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, which was denied by the trial court on May 12, 2008. Petitioner sought leave to appeal to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.    THE EVIDENCE OBTAINED FROM THE COERCED CONSENT SHOULD HAVE BEEN SUPPRESSED AS A VIOLATION OF MR.

3

AYRE'S CONSTITUTIONAL RIGHTS.

II.     IF THE SEARCH AND SEIZURE IS DEEMED INVALID, TRIAL
        COUNSEL AND PRIOR APPELLATE COUNSEL WAS INEFFECTIVE
        IN REPRESENTING MR. AYRE.

Petitioner also filed a supplemental *pro se* brief, raising the following claims:

I.      VIOLATION OF 4TH AMD., CONST. 1963, AND MCL'S 780.651 AND
        MCL 780.653, DURING INVENTORY SEARCH.

II.     CONSENT TO SEARCH IS INVALID AND INADMISSIBLE.

III(a). TRIAL COUNSEL WAS INEFFECTIVE.

III(b). APPELLATE COUNSEL WAS INEFFECTIVE AND UNETHICAL.

The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard

order, "for lack of merit in the grounds presented." *People v. Ayre*, No. 287831 (Mich. Ct. App.

Dec. 30, 2008). The Michigan Supreme Court denied petitioner's application for leave to appeal

in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to

relief under MCR 6.508(D)." *People v. Ayre*, 485 Mich. 862, 771 N.W.2d 784 (2009).

        8.      Petitioner, proceeding *pro se*, filed an amended petition and motion to reopen the case

on November 2, 2009. As set forth in his amended petition, petitioner raises the following grounds

for relief:

I.      Illegal search and seizure.

        a.      Initial inventory search not conducted in accordance with written
                policy of the Midland City Police, thus waiving warrant exception.

        b.      Initial seizure and viewing of CD-RWs was unlawful in that it
                represents a warrantless evidentiary search based on suspicion and
                was unlawfully authorized by the county's chief prosecuting attorney
                rather than a neutral judge or magistrate.

        c.      Consent to search granted by Ayre in custody as a result of the initial

4

warrantless search described in (b.) is deficient as being tainted and involuntary, and is subject to suppression as such.

II.     Plea is deficient.

    a.     Plea is illusory.

    b.     Plea is unknowing and involuntary.

III.    Factual basis insufficient to support plea.

    a.     Factual basis as to MCL 750.145c4, CSAM possession is deficient.

    b.     Factual basis as to MCL 752.796, Use of computer to commit crime is deficient.

IV.     Defense counsel ineffective.

    a.     Failure to investigate or provide defense option to pleading.

    b.     Failure to ensure defendant was properly advised.

    c.     Failure to object to amendment of charges and resulting errors.

9.      Respondent filed his answer on August 2, 2010.  He contends that petitioner's plea claims are without merit, and that the remaining claims are barred by petitioner's procedural default in the state courts.

10.     Petitioner filed a reply to respondent's answer on September 3, 2010.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the discovery of computer discs containing pornographic images of minors, uncovered during an inventory search of his automobile following his arrest by officers of the Midland Police Department.  On May 28, 2003, petitioner waived his preliminary examination and entered a plea pursuant to an agreement with the prosecution.  At the hearing, the prosecutor set forth the terms of the agreement, pursuant to which petitioner would plead guilty to

5

three charges of possession of child sexually abusive material under MICH. COMP. LAWS § 750.145c(4) with an enhanced sentence based on use of computer to facility the crime under MICH. COMP. LAWS §§ 752.796, .797(3)(d), in exchange for dismissal of several additional charges of possession of child sexually abusive material and a charge of operating a motor vehicle without security. The parties also agreed to a *Killibrew* recommendation of no more than 42 months' imprisonment on the minimum sentence, and that the plea did not affect the State of South Carolina's ability or jurisdiction to take any action with respect to petitioner's crimes. *See* Plea Tr., at 6. Both petitioner and his counsel confirmed this understanding of the plea agreement. *See id*. at 7. The court informed petitioner that it had made no agreement regarding petitioner's plea or sentence, and that if the sentencing judge[1] chose not to abide by the sentence agreed to by the parties petitioner would be permitted to withdraw the plea. Petitioner indicated that he understood. *See id*. The court then informed petitioner of the potential maximum penalty that he faced with respect to each of the charges to which he was pleading guilty. *See id*. at 7-8.

The court next informed petitioner of the types of pleas that he could enter, and of the rights he would waive by pleading guilty. Petitioner indicated that he understood his rights and that he was waiving them by entering his plea. *See id*. at 8-9. Petitioner indicated that he was giving his plea freely and voluntarily, that he had no questions, and that he understood everything that had been explained to him. *See id*. at 9. The court then established a factual basis for the plea, through petitioner's admissions that he possessed three computer discs in his car that contained pornographic images of minors. *See id*. at 9-14. Petitioner then indicated that he understood the three charges to

---

[1]Petitioner's plea was entered before the district court judge acting in the capacity of a circuit court judge for purposes of accepting the plea, pursuant to the consent of the parties. *See* Plea Tr., at 5. Petitioner's sentencing was conducted by a circuit court judge.

which he had pleaded guilty and that it was his own choice to plead guilty. *See id.* at 14. Petitioner also denied that any one had threatened him or coerced his plea, that anyone had made promises to him other than what was reflected in the plea agreement, and that he was under the influence of any intoxicants. *See id.* at 15. The prosecutor and defense counsel also confirmed that they were aware of no other inducements for petitioner's plea. *See id.* The court therefore accepted petitioner's plea. *See id.* at 16-17.

At sentencing, an issue arose as to whether the charge of using a computer to commit a crime, with which petitioner had been charged, constituted a sentencing enhancement or a separate crime. It was charged in the information as an enhancement, and the parties had proceeded through the plea on that understanding. After analyzing the matter, the sentencing judge concluded that "this is not a simple enhancement question and that the legislature has simply used the enhancement modality in defining a separate crime, and the crime is use of a computer to aid in the possession, if you will, of sexually abusive material. It's a separate crime." Sentence Tr., at 2-3. The court explained that the "importance of that is the guideline question," because although the possession crime was governed by the sentencing guidelines, there was no guideline covering the use of a computer crime. *See id.* at 3.[2] After discussing some other matters, both the prosecutor and defense counsel set forth their views on how the enhancement/separate crime issue affected petitioner's plea

---

[2]Importantly, treating the computer charge as a separate crime did not affect the potential maximum sentence. At the plea hearing, the district judge explained to petitioner that the possession conviction "carries *with the sentence enhancement* imprisonment up to 7 years[.]" Plea Tr., at 3 (emphasis added); *see also, id.* at 7-8. At the sentencing hearing, the circuit judge explained that "[t]he combination of those two separate crimes leads to a maximum possible sentence in this case of 7 years[.]" Sentence Tr., at 2. Thus, petitioner faced the same maximum sentence regardless of whether the computer charge was treated as an enhancement or a separate crime, and whether the computer charge was treated as an enhancement or a separate crime could only potentially affect the minimum sentence as determined by the sentencing guidelines.

and sentence.  The prosecutor agreed with "the court's ruling in terms of the lack of applicability to actually any sentencing guidelines at this time," explaining that he did not "believe there have been any produced yet that would apply to the 7-year computerized offense that the defendant actually has admitted to and been convicted of in this case."  *Id*. at 7-8.  The prosecutor also explained that, in his discussions with defense counsel, they had determined that it might be appropriate to use a "D classification," rather than the "F classification" applicable to the underlying possession offense, applicable to a 7-year offense in computing the guidelines, but that there was a possibility that the guidelines would not apply.  Because of this uncertainty, "the 42-month cap eventually was negotiated as a compromise."  *Id*. at 8.  Defense counsel responded by arguing that the court apply the "D classification" guidelines, but indicated that this issue was discussed by the parties and was known to petitioner:

> I want to say for this record that at all times since this was filed and, in fact, even preceding the filing of this Information I had been in conference with Mr. Donker and was informed of Mr. Donker's intent to charge the 7-year offense, which he saw as an enhancement.  My client was fully aware of that prior to and at the time the plea was undertaken and he knew, in our negotiations with the prosecutor's office, not only of the 7-year offense but the scoring issue with respect to guidelines.  We have repeatedly discussed that there are no guidelines that apply to the 7-year offense; and I discussed with him the prosecution's approach of using similar guidelines, if you will, and it is our view, different from all of what's been stated on this record, that it is the sentencing guidelines that the probation department has prepared that should be adopted and utilized by this court.  If that were the case, the guideline range would be 2 to 17 months.
>
> The plea agreement contemplated this argument.  The plea agreement was clear that we would be free to argue for something less than 42 months and, in fact, in our negotiations, I would be arguing for the guidelines for this offense as it was originally seen, a 4-year child sexual abusive material, the guideline range would be used.  That would be our argument before the court.
>
> But I say all of this so that the record is clear that at all times we knew that there was a possibility this court would rule that there were no guidelines.  We knew that; we considered it in our deliberations.

*Id*. at 10.

8

After hearing from defense counsel, petitioner, and the prosecutor, the trial court imposed

its sentence without relying on the guidelines. The court explained that "I'm sentencing because it

is my belief as a matter of law that there are no guidelines and, therefore, I'm applying rules of

proportionality; that is, taking into account the nature of this crime and all its aspects and the record

and issues surrounding this individualized defendant." *Id*. at 18. After addressing these factors, the

court imposed a minimum sentence of 42 months' imprisonment, consistent with the cap agreed to

by the parties, and a maximum sentence of 7 years' imprisonment as required by the statute. *See*

*id*. at 21.

C.      *Procedural Default*

Respondent first contends that search (Claim I) and ineffective assistance (Claim IV) claims

are barred by petitioner's procedural default in the state courts, because petitioner failed to raise

these claims on direct appeal. The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of

federal law if the state court's decision rests on a substantive or procedural state law ground that is

independent of the federal question and is adequate to support the judgment. *See Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration

of a federal claim on either direct or habeas review unless the last state court rendering a judgment

in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489

U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be

interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v.*

*Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984));

*see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir.

1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." In *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000), the court held that this identical language constitutes an invocation of the procedural aspects of Rule 6.508(D), and thus bars federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000). However the en banc Sixth Circuit has recently rejected this rule, holding that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Looking through the appellate court orders, it is clear that the trial court denied relief on the merits of petitioner's claims, and did not invoke the procedural bar in Rule 6.508(D)(3). The trial court held a hearing on petitioner's motion

10

for relief from judgment on April 10, 2008. At the conclusion of that hearing, the court denied

petitioner's motion. In doing do, the court did not rely on any procedural bar, but rather found that

petitioner's claims were without merit. *See* Mot. Hr'g Tr., dated 4/10/08, at 35-40. The trial court

subsequently entered an order denying the motion "for the reasons stated on the record." Because

the trial court rejected the claims on the merits, rather than on the basis of a procedural rule, the

claims are not defaulted.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

11

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Illegal Search (Claim I)*

Petitioner first contends that the search and seizure of his car, which resulted in the discovery of the sexually abusive material, violated his rights under the Fourth Amendment. This claim does not provide a basis for habeas relief, for two reasons.

First, this claim is waived by petitioner's guilty plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In pleading guilty, petitioner did not reserve his right to appeal the Fourth Amendment issues, and thus his guilty plea constitutes a waiver of his Fourth Amendment claims. *See United States v. Villegas*, 388 F.3d 317, 322 (7th Cir. 2004); *United*

*States v. Martinez-Orozco*, 52 Fed. Appx. 790, 792 (6th Cir. 2002).

Second, this claim is not cognizable on habeas review. Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam). Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985). There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). Further, petitioner obtained substantive review of his Fourth Amendment claim in the postconviction proceedings, and that claim was denied on the merits. Thus, petitioner's claim is not cognizable on habeas review.

F.      *Validity of Plea (Claims II & III)*

Petitioner next challenges the validity of his plea on several grounds.  In Claim II, he argues that his plea was illusory and that it was not knowingly and voluntarily entered.  In Claim III, he contends that the court failed to establish an adequate factual basis for the plea.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Illusory and Involuntary Plea*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).  Petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had

not been threatened or coerced into pleading guilty.  *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Rather, petitioner raises specific incidents which he contends rendered his plea involuntary or unknowing.

Most of petitioner's challenges to the voluntariness of his plea can be disposed of readily. For example, petitioner contends that, because of the lack of clarity regarding whether the computer charge was a sentence enhancement or a separate offense, his plea was illusory.  An illusory plea bargain is one which offers no real benefit to the defendant.  *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000).  A plea is not illusory where the defendant "received a real, tangible benefit in consideration for the plea."  *Jones v. Prelesnik*, No. 2:08–CV–14126, 2011 WL 1429206, at * (E.D. Mich. Apr. 14, 2011) (Zatkoff, J.) (citing *Daniel v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich.1994)).  Here, regardless of the dispute on the enhancement/substantive crime issue, petitioner received a tangible benefit by pleading guilty: namely, a cap of 42 months on the minimum term of imprisonment and dismissal of other charges against him.  Because petitioner received a real benefit, his plea was not illusory.

Petitioner also contends that his plea was involuntary because he was not informed of the possible sentence enhancement for the computer charge or of the plea offer until he arrived in court on the day the plea was entered.  A plea is not rendered invalid merely because a defendant has only a short time to consider the plea offer; rather, "the amount of time [a defendant] had to consider the plea is only relevant if it somehow rendered his plea coerced, and therefore involuntary."  *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007); *cf. Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir.

1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary.").  Beyond his simple assertion that he had only a short time to consider the enhancement and the plea offer, petitioner does not explain how this fact rendered his plea unknowing or involuntary.  At the plea hearing, petitioner indicated that he understood the terms of the plea agreement.  *See* Plea Tr., at 7.  He also indicated that he was satisfied with the representation of counsel, *see id*. at 5, and counsel indicated that petitioner was aware of the elements of the charged offenses and of the maximum penalties, *see id*. at 6.  Counsel also indicated at sentencing that he and petitioner had fully discussed the sentencing implications of the enhancement.  *See* Sentence Tr., at 10.  These representations by petitioner and counsel indicate that petitioner understood the plea he was entering, and the short time frame alone therefore does not render his plea invalid.  *See Doe*, 508 F.3d at 570-72.

Petitioner also contends that his plea agreement was not voluntary because he did not know the elements of the crime, specifically that his possession of the child sexually abusive material had to be "knowing."  He contends that while he knew the CDs were in the vehicle, he did not know the contents of those CDs because they belonged to a former roommate.  He therefore argues that, had he been aware that the prosecution was required to establish his "knowing" possession of the images, he would not have pleaded guilty.  This argument, however, is belied by the record.  Although the court itself did not explain the elements of the charges to petitioner, counsel indicated that petitioner understood the elements of the offense and the maximum possible sentences.  *See* Plea Tr., at 6.  It is true that "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements, . . . the plea is invalid."  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

17

It is equally true, however, that the Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." *Id*. To the contrary,

> the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

*Id*. The record reflects that counsel explained the elements to petitioner, and thus his plea was not involuntary on this basis. Further, contrary to his claim that he would have proceeded to trial had he been aware of the knowledge element, in his plea colloquy petitioner explicitly admitted that he "possessed [the discs] knowing that [they] had sexually abusive material on all of those discs." Plea Tr., at 14.

Petitioner next contends that his plea was involuntary because he was never informed that, upon conviction, he would be required to register as a sex offender. For a plea to be valid, a defendants must be informed of all "direct" consequences of his plea. *See Brady*, 397 U.S. at 755. A court need not, however, inform a defendant of the collateral consequences of his plea. *See King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). A requirement to register as a sex offender is a collateral, as opposed to direct, consequence of a plea, and thus the failure to explain registration to a defendant does not render his plea invalid. *See United States v. Cottle*, 355 Fed. Appx. 18, 20-21 (6th Cir. 2009); *Blumenthal v. Curley*, No. 2:08-cv-14858, 2011 WL 6090183, at *6 (E.D. Mich. Dec. 7, 2011) (Roberts, J.). At a minimum, the Supreme Court has never held that sex offender registration is a direct consequence of a plea about which a defendant must be informed, and thus the trial court's acceptance of petitioner's plea without informing him of the registration requirement was neither contrary to nor an unreasonable application of clearly established law sufficient to

18

warrant habeas relief under § 2254(d).  *See Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008).

Petitioner also contends that he did not understand that the sentence cap of 42 months' applied only to the minimum term of imprisonment.  He argues that because he was a resident of a state that employed a determinate sentencing scheme in which only a single flat term of imprisonment is imposed, he did not understand the indeterminate sentencing scheme in which both a minimum and maximum term of imprisonment is imposed.  However, the plea transcript shows that the deal was explained as a cap on the minimum term of imprisonment that could be imposed, and petitioner indicated that he understood the terms of the agreement.  *See* Plea Tr., at 6-7.  Further, counsel indicated at sentencing that petitioner was aware of the sentencing ramifications of his plea, and that the sentencing matters had been extensively discussed with petitioner.  *See* Sentence Tr., at 9-10.  And at no point in his motion to withdraw his plea or in his direct appeal did petitioner raise this argument as a basis for finding his plea involuntary.

The crux of petitioner's voluntariness argument comes down to the initial, incorrect assumption by all involved that the computer charge under § 752.796 was an enhancement, rather than a separate charge.  At the outset, the fact that this charge was initially asserted as an enhancement rather than a separate crime does not render petitioner's plea "involuntary" or "unknowing" in the ordinary sense of those words.  Petitioner agreed to a deal in which he would plead guilty to three counts carrying a maximum sentence of 7 years' imprisonment, with a minimum term of imprisonment not to exceed 42 months.  This is the precise agreement that the trial court enforced at sentencing, and petitioner has not explained how his plea would have been any different had he known at the outset that the computer charge was a separate crime as opposed to simply an enhancement.  Petitioner bargained for a plea deal and received the benefit of his bargain,

19

and no term of the deal was affected by whether the computer charge was considered an enhancement or a separate crime.

The more difficult question is whether petitioner actually entered a plea to the computer charge. To be sure, the plea transcript is not a model of clarity, and this is a close issue. However, the state courts rejected this claim on the merits, and thus it is subject to the deferential standard of review set forth in § 2254(d).[3] Under that standard, the Court should conclude that petitioner is not entitled to habeas relief on this claim. In denying petitioner's motion to withdraw his plea, the trial court explained that the counts of the information to which petitioner pleaded guilty charged both the possession crime under § 750.145c and the computer crime under § 752.796, albeit the latter as an enhancement. *See* Withdrawal Op., at 1-2. The court also noted that "[a]t sentencing, counsel for [petitioner] indicated that his client was on notice of the 7-year offense even though it was discussed at the plea as an enhancement." *Id*. at 2. Based on these facts, the trial court rejected petitioner's claim, explaining that while

---

[3]The deferential standard of review set forth in § 2254(d) applies even though the Michigan Court of Appeals did not issue a reasoned decision. As the Supreme Court has explained, an unexplained summary order by a state court is presumed to be a rejection of the claims on the merits, and the petitioner bears the burden of demonstrating that the rejection was on some basis other than the merits. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). Here, there is no indication that the Michigan Court of Appeals denied petitioner's application for leave to appeal on any basis other than the merits. On the contrary, the court of appeals explicitly stated that its denial was "for lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a denial on this basis is "a determination on the merits of the case." *Attorney Gen'l ex rel. Dep't of Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249 (1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28, 2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3 (Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332 N.W.2d 521, 523 (1983). Accordingly, the Michigan Court of Appeals's denial of petitioner's application for leave to appeal "for lack of merit in the grounds presented" constitutes an adjudication on the merits for purposes of § 2254(d). *See Snyder v. Lafler*, No. 09-13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.). Further, even if the Court could "look through" the court of appeals's unexplained order, the trial court expressly rejected petitioner's claim on the merits.

20

5:06-cv-11327-JCO-PJK   Doc # 41   Filed 07/19/12   Pg 21 of 32   Pg ID 461

it is true that the PAAC code used for the automated Information printing describes
MCL 752 [sic] as an enhancement, . . . the Information gives the statutory citation
and makes the connection with the Possession statute that is relevant.  The mere
mention of enhancement doesn't change the fact that the defendant was on notice of
what he was charged with. . . .

The defense counsel's remarks at sentencing make it quite clear that his client
was on notice of being charged with the 7-year offense and that it was the basis of
his pleas, both factually and substantively.  Defense counsel's argument puts form
over substance.  The defendant was on notice at all times of the crime he was
charged with and which he plead to.

*Id*. at 2-3.[4]  This determination was reasonable in light of the record.  As the trial court explained,

each count of the Information to which petitioner pleaded guilty listed both the possession offense

and the computer offense, with the correct statutory citations.  Further, petitioner's counsel made

it clear both that he and petitioner were aware of the computer crime and the greater sentence it

carried, and that counsel had explained the elements of the offenses to petitioner.  It is true that the

trial court did not explicitly elicit a factual basis for the plea to the computer crime.  As explained

below, however, the failure to establish a factual basis for the plea does not render his plea invalid

as a matter of federal constitutional law.  Petitioner explicitly stated that he was pleading guilty to

Counts I, V, and VI of the Information, and each of those counts listed the offense set forth in §

752.796.  For these reasons, the trial court's rejection of petitioner's claim was neither an

unreasonable application of clearly established law under § 2254(d)(1) nor an unreasonable

---

[4]Indeed, the parties' and the courts' focus at the time of the plea and sentencing on the
distinction between an enhancement and a substantive crime was meaningless at the time of petitioner's
plea.  Three years earlier the Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that
"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
*Id*. at 490.  This is so regardless of how the state describes the elements, either as a substantive offense
or merely an enhancement.  *See id*. at 494 (describing the distinction between elements of the offense
and sentencing factors as "constitutionally novel and elusive").  Under *Apprendi*, "[t]he days of
semantical hair splitting between 'elements of the offense' and 'sentencing factors' are over."  *United
States v. Buckland*, 289 F.3d 558, 566 (9th Cir. 2002) (en banc) (citation omitted).

determination of the facts under § 2254(d)(2). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

       2.    *Factual Basis*

Petitioner also contends that the trial court failed to establish an adequate factual basis for the plea with respect to any of the charges for which he was convicted. This claim is without merit. "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254." *Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991). Because the writ of habeas corpus exists only to correct errors of federal law, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Circ. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance (Claim IV)*

Finally, petitioner contends that counsel was ineffective in a number of respects. Specifically, petitioner contends that counsel was ineffective for failing to: (1) investigate or provide a defense option to pleading; (2) ensure that he was properly advised; and (3) object to the amendment of the charges and the resulting errors. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

       1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

23

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

This standard is particularly rigorous in the plea bargaining context. Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made

24

at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011). Further, to demonstrate prejudice as a result of counsel's performance with respect to the entry of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id*. at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

     2.    *Analysis*

### a. Failure to Investigate

Petitioner first contends that counsel was ineffective for failing to investigate and provide a defense option to pleading guilty. Petitioner does not contend that counsel should have investigated any facts that would have supported a factual defense to the charges against him. Rather, petitioner contends that counsel should have investigated the circumstances of the search and, had he done so, he would have obtained suppression of the evidence seized from the search, without which he could not have been prosecuted. To establish prejudice on this claim, petitioner must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that [he would not have pleaded guilty] absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).[5]

There are actually two "searches" involved here. Upon arresting petitioner for driving with a suspended license, the police conducted an inventory search of the car and discovered the CDs. The police then viewed those CDs pursuant to petitioner's consent. In his motion for relief from judgment, petitioner argued that his consent to search was invalid or did not cover actually viewing

---

[5]Although *Stone v. Powell, supra*, bars litigation of a Fourth Amendment claim on habeas review, a Sixth Amendment claim of ineffective assistance of counsel based on counsel's failure to properly present a Fourth Amendment claim is distinct, and is cognizable on habeas review under the standard set forth in *Strickland. See Kimmelman*, 477 U.S. at 374-75.

the CDs, and that counsel was therefore ineffective for failing to move to suppress the search. The trial court conducted a hearing on the motion, at which Detective James Hurd and petitioner testified. Detective Hurd testified that he read petitioner his *Miranda* rights, and petitioner waived his rights at that time. Petitioner did not appear to be under the influence of any drugs or alcohol, and did not appear sleep deprived. *See* Mot. Hr'g Tr., dated 4/10/08, at 5-6. He spoke to petitioner about the CDs found in the car, and petitioner accepted responsibility for the CDs and indicated that he had a problem with child pornography. *See id.* at 7-8. Petitioner told him that child pornography would be found on the CDs. *See id.* at 9. Hurd explained to petitioner that he needed either a warrant or consent to search view the CDs, asked petitioner for consent, and explained that he had the right to refuse consent, in which case Hurd would seek a search warrant from a judge. *See id.* at 9. Hurd had an old consent to search form, which he modified in hand in front of petitioner. While discussing the form, petitioner agreed to sign it and give permission to search his car and its contents, as well as his bedroom. *See id.* at 10. Detective Hurd conceded on cross-examination that, at the time, he thought that petitioner's crime was a misdemeanor. He also told petitioner that the state prosecutor may decide to turn the matter over to federal authorities. *See id.* at 13. He indicated that he and petitioner talked specifically about viewing the CDs, but the consent form did not specifically mention viewing the CDs. *See id.* at 14-15. Petitioner testified that when he consented to the search, he did not believe that he was consenting to a viewing of the CDs recovered by the police. *See id.* at 18. Petitioner felt under pressure to sign the consent form because he believed the crime was only a misdemeanor, that the matter might be turned over to federal authorities, and that consent was only a formality because the officers had already viewed the CDs that were initially recovered. *See id.* at 19. As far as he was aware, his attorney did not investigate the search issue,

telling him only that the search was legal. *See id*. at 21. Petitioner testified that he did not sleep in jail the night before he gave consent, and that he was bewildered. *See id*. at 25-26.

The trial court denied petitioner's motion, explaining that "[t]here was nothing that was improper as to the inventory search itself in that the stop was justified pursuant to driving while license suspended charge for which the defendant was detained properly[.]" *Id*. at 37. The court also found that the consent to search was valid and that it covered viewing the CDs discovered by the police. The court explained that it would have been unreasonable for petitioner to believe that the CDs recovered by the police would not be viewed, and that the consent form provided consent to seize any items indicative of criminal activity. *See id*. at 38. This determination was reasonable, and thus petitioner cannot show that counsel was ineffective for failing to investigate the search or seek suppression of the CDs.

Where the police have lawfully taken custody of a vehicle, the police may conduct a valid inventory search of the vehicle without obtaining a warrant. *See United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007); *see also*, *South Dakota v. Opperman*, 428 U.S. 364, 369-71 (1976). Petitioner does not contend that either his initial stop or his arrest was unlawful, and thus the police had lawful custody of his vehicle and could perform an inventory search. The only question, therefore, was whether petitioner's subsequent consent was voluntary and covered viewing the CDs within its scope. With respect to the former, the trial court reasonably concluded that petitioner's consent was valid. Petitioner argues that he consented because he thought he was only facing a misdemeanor charge and because he feared the charges could be referred to federal authorities. He does not allege, however, that he was in any way threatened or coerced by Detective Hurd. The trial court's finding that petitioner's consent was voluntary is a factual finding, *see Schneckloth v.*

27

*Bustamonte*, 412 U.S. 218, 227 (1973), and thus can be overcome only by showing that it was unreasonable, *see* 28 U.S.C. § 2254(d)(2). Because Detective Hurd's testimony supports a finding that petitioner's consent was voluntary, the trial court's finding was reasonable.

As to the scope of petitioner's consent, petitioner's subjective expectation is irrelevant. The question regarding scope of consent concerns whether the contents seized fell within the expressed purpose of the search, determined under an objective standard that asks "what would the typical reasonable person have understood by the exchange between the officer and subject?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *see also*, *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997). In making this determination, a court looks not only to the actual words of the consent, but also "to the overall context, which necessarily encompasses contemporaneous police statements and actions." *United States v. Melendez*, 301 F.3d 27, 32 (1st Cir. 2002) (internal quotation omitted). Here, it was clear that the police were looking for evidence of child pornography, including videos contained on petitioner's CDs. A reasonable person would have understood that Detective Hurd's request for consent and petitioner's granting of consent to search for such evidence included actually viewing the CDs. *See United States v. Lucas*, 640 F.3d 168, 177-78 (6th Cir. 2011) (consent to search home for evidence of narcotics trafficking reasonably included consent to search contents of computer); *United States v. Cottle*, 355 Fed. Appx. 18, 21 (6th Cir. 2009) (general consent to search home for evidence of child pornography included consent to search computer). Thus, the trial court reasonably concluded that the search of petitioner's car and the viewing of the CDs was valid under the Fourth Amendment, and it therefore follows that petitioner cannot show that he was prejudiced by counsel's failure to investigate the search or bring a motion to suppress. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

28

*b.  Failure to Advise and Object*

In his other ineffective assistance claims, petitioner asserts that counsel was ineffective for failing to properly advise him concerning the plea and for failing to object to the trial court sentencing him on the computer charge as a separate crime.  As explained above, the record reflects that counsel discussed with petitioner both the elements of the offenses and the penalties he faced.  Further, there was no requirement that counsel or the court inform petitioner that he would be required to register as a sex offender.  Finally, because petitioner properly pleaded guilty to the computer offense, there was no basis for counsel to object to his sentencing under § 750.796.  Accordingly, the Court should conclude that these claims are without merit.

H.   *Recommendation Regarding Certificate of Appealability*

1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

29

issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.   *Analysis*

If the Court accepts the foregoing recommendation, the Court should nonetheless grant

petitioner a certificate of appealability, limited to the claim that his plea was involuntary because he did not actually plead guilty to the computer offense under § 752.796. For the reasons explained above, petitioner is not entitled to relief on this claim. However, in light of the lack of clarity in the record regarding petitioner's plea, the confusion surrounding the computer charge, and the uniqueness of this issue, the Court should conclude that the resolution of this issue is debatable, and thus that petitioner is entitled to a certificate of appealability. In all other respects, the Court should conclude that petitioner is not entitled to a certificate of appealability. It is clear that petitioner's Fourth Amendment claim is not cognizable on habeas review and was waived by petitioner's plea, and thus the resolution of this claim is not reasonably debatable. Likewise, it is not debatable that petitioner's claim that a factual basis was not established for the pleas is not cognizable on habeas review. Further, because petitioner validly consented to the viewing of the CDs, the resolution of petitioner's ineffective assistance claim related to the search issue is not reasonably debatable. Finally, for the reasons explained above the resolution of petitioner's remaining voluntariness claims, and thus of his related ineffective assistance claims, is not reasonably debatable.

I.      *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should grant a certificate of appealability limited to petitioner's claim that his plea was involuntary because he did not properly plead guilty to the computer charge under § 752.796.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 7/19/12


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 19, 2012.

                    s/Eddrey Butts
                    Case Manager

32